UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:12-CR-445 (07) |
| | ) | |
| vs. | ) | |
| | ) | |
| Francisco Rodriguez, | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| Defendant. | ) | |

Before me is defendant Francisco Rodriguez's motion to suppress in which he claims the affidavits supporting the two search warrant applications contained false assertions. Mr. Rodriguez requests a hearing pursuant to *Franks v. Delaware* on the warrants' validity. 438 U.S. 154 (1978). For the reasons stated herein, I deny the motion to suppress and the request for a hearing.

### Background

DEA Task Force Agent Mark Apple obtained warrants in 2009 and 2011 to search Mr. Rodriguez's home at 6616 U.S. Rte. 6 in Gibsonburg, Ohio. The first search, in February 2009, produced 14.5 kilograms of cocaine and $19,000 in cash. Agents searched the house a second time in January 2011.[1]

The 2009 warrant application's affidavit details how a confidential informant made a series of cocaine purchases between November 2008 and January 2009 from a Moises Razo at 4561 U.S. Rte. 6 in Fremont, Ohio. Agents observed Mr. Razo going to Mr. Rodriguez's residence at 6616 U.S. Rte. 6 after three purchases and coming from that address on the way to meet the informant to consummate one purchase. Further, on one occasion, Mr. Razo told the confidential informant that

---

[1] The parties and the indictment do not specify what, if anything, the 2011 search produced, but the product of that search is immaterial to this analysis.

his cocaine supplier was out of town in the same time period that Agent Apple observed a lack of activity and vehicles at Mr. Rodriguez's residence.

In the affidavit, Agent Apple also says he previously became aware of 6616 U.S. Rte. 6 when other law enforcement officers stopped a vehicle on Route 6 and the vehicle pulled over into the driveway at 6616 U.S. Rte. 6. When questioned about why he stopped there, the driver said he knew Mr. Rodriguez. The officers approached Mr. Rodriguez at his door and he said that he knew the driver, although he was not expecting him to visit that day. The driver said he was on his way to a city in southern Texas. A search of his car produced $209,070 in cash.

The affidavit also contains Agent Apple's claim that during an unrelated February 2008 search of another residence, agents found $739,630 in cash and a receipt in Mr. Rodriguez's name (although he does not aver that the receipt was found with the cash or was otherwise associated with the cash).

Based on this affidavit, Agent Apple applied for and received a warrant to search 6616 U.S. Rte. 6 on February 5, 2009. That search produced 14.5 kilograms of cocaine and $19,000 in cash.

The 2011 warrant application states agents found 14.5 kilograms of cocaine and $19,000 in cash in the 2009 search. The application also repeats the traffic stop incident in which the driver being stopped pulled into the driveway of 6616 U.S. Rte. 6, and it repeats that agents recovered a receipt with Mr. Rodriguez's name on it during the search of another house.

The 2011 affidavit goes on to assert that Agent Apple knows Mr. Rodriguez to be the source of drug supply for a Rafael Gonzales and details an incident in January 2011, where officers conducting surveillance saw Mr. Rodriguez leave his residence at 6616 U.S. Rte. 6 and meet Mr. Gonzales and a confidential informant. It says that the confidential informant saw that Mr. Rodriguez brought a quantity of frozen cocaine to that meeting.

**The Veracity of the Affidavits**

Mr. Rodriguez cites *Franks*, 438 U.S. at 171, to attack the veracity of statements made in support of the warrant applications. "A defendant is entitled to a *Franks* hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013). The movant carries the burden of pointing to the affidavits' false statements and making an offer of proof that would show their falsity. *Franks*, 438 U.S. at 171.

Both the 2009 and 2011 affidavits claim that a driver being stopped by police pulled into Mr. Rodriguez's driveway; that the driver identified Mr. Rodriguez as a friend of his; that when law enforcement came to his door, Mr. Rodriguez told them the driver was his friend; that the driver told police he was driving to a city in southern Texas; and, that a search of that car produced $209,070 in cash. While Mr. Rodriguez's motion to suppress mentions the traffic stop in its "Facts" section, it is only in his reply brief that he first claims the allegation is untrue. Claims are not properly first raised in a reply brief. *United States v. Perkins*, 994 F.2d 1184, 1191 (6th Cir. 1993).

Nevertheless, I will overlook the lateness of his raising the issue and consider the merits of his claim. But, even if Mr. Rodriguez had properly raised this claim in his motion to suppress, it does not have merit. In asserting his *Franks* claim of falsity in the affidavit, Mr. Rodriguez states "no car pulled into his driveway on this incident" and that he never told the officers that "the driver of this vehicle was a friend of his." (Reply, Doc. 383 at 1–2.) He says he can use motor vehicle records and Agent Apple's testimony to refute the veracity of the traffic stop claim. Mr. Rodriguez explains neither what the motor vehicle records might show nor what Agent Apple, who did not claim to be present at this incident, might say. He also does not explain how either could support his contention

that the claim is false. Without this basic proffer, Mr. Rodriguez cannot make a substantial preliminary showing that the traffic stop claims were false or made with reckless disregard for the truth. *Rose*, 714 F.3d at 370.

Nevertheless, even assuming he could show the traffic stop incident happened differently than Agent Apple avers or did not happen at all, Mr. Rodriguez cannot meet the second *Franks* element of demonstrating that the untrue statements were necessary to finding probable cause. *Id.* Mr. Rodriguez says that the traffic stop incident is the only link between him and large quantities of money and drugs from southern Texas. This misses the point; in both warrants issued to search the 6616 U.S. Rte. 6 premises, the test is whether they demonstrate probable cause that officers would find drugs there, not whether they show probable cause Mr. Rodriguez was involved in the drug trade. Even removing the traffic stop incident from both supporting affidavits, each one still shows a chain of events involving the property. The 2009 affidavit contains several instances of confidential informants buying drugs from Mr. Razo and Mr. Razo going to the 6616 U.S. Rte. 6 property before and after the transactions. The 2011 affidavit includes the fact that 14.5 kilograms of cocaine and $19,000 in cash were recovered from the property in the 2009 search and adds that a confidential informant observed Mr. Rodriguez in possession of cocaine when he met another drug dealer right after leaving the property at 6616 U.S. Rte. 6.

In short, the affidavits contain sufficient probable cause to support the issuance of the warrants to search the property, whether or not the traffic stop incident is included in each. In fact, even if it is true that the stopped driver and Mr. Rodriguez were friends, this information is relatively superfluous to the warrant application; probable cause more firmly rests on the property's relationship to the drug transactions.

In addition to the claim of falsity raised in the reply brief, Mr. Rodriguez's motion contains three instances where he says Agent Apple acted with reckless disregard for the truth: (1) when

Agent Apple stated in the 2009 affidavit that he believed that drugs were being stored at Mr. Rodriguez's residence and that he had probable cause for a warrant; (2) when he stated in the 2011 affidavit that he knew that Mr. Rodriguez was a drug supplier to a Rafael Gonzales without any other support for that proposition; and (3) when he stated in the 2011 affidavit that he believed "that drugs are currently being stored at 6616 U.S. Rte. 6, Gibsonburg, Ohio" and that probable cause existed for a warrant.

The first and third statements are not *Franks* material because they are the affiant's conclusory beliefs, not factual statements able to be tested for their veracity. *Franks* recognizes claims where the defendant can show the affidavit states an actual falsehood. *Franks*, 438 U.S. at 164 ("[T]he integrity of the affidavit was directly placed in issue by petitioner in his allegation that the affiants did not, as claimed, speak directly to Lucas and Morrison."). All that the first and third statements do, though, is assert that the case agent believed that drugs were then being stored at the residence and that he had probable cause to obtain a warrant.

The second statement can be tested for veracity: "Through previous surveillance your affiant knows that FRANCISCO RODRIGUEZ is one [source of supply] of cocaine for GONZALES, and has put them together on several occasions." (Doc. 373-2 at ¶ 9.) Even though this could be tested for truthfulness, Mr. Rodriguez's motion does not claim that the statement is false and only says that Agent Apple "acted in reckless disregard for the truth when he stated that Defendant was the source of supply for Gonzales." (Motion, Doc. 361 at 6.) To negate the truth of this statement, however, Mr. Rodriguez would have to show some falsity (for instance, that no surveillance was done or that he was not, in fact, Mr. Gonzales' source of supply). Mr. Rodriguez makes no offer of proof of the statement's falsity and only claims that Agent Apple acted in reckless disregard of the truth. *Franks* requires more than this. 438 U.S. at 157.

### The Sufficiency of Detail in the Affidavits

Mr. Rodriguez also generally raises *United States v. Weaver*, 99 F.3d 1372, 1379–80 (6th Cir. 1996). *Weaver* disallows "bare bones" affidavits that rely only on boilerplate language and sparse or conclusory substantive claims. *Id.* The statement about Mr. Rodriguez being Mr. Gonzales' supplier appears bare bones in this context; the same affiant provided some detail in the previous affidavit to support his conclusion that Mr. Rodriguez was Mr. Razo's source of supply. (Doc. 373-1 at ¶¶ 10, 15–20 (detailing how a confidential informant purchased cocaine from Mr. Razo while agents conducting surveillance saw Mr. Razo going and coming from 6616 U.S. Rte. 6 before and after the transactions).) This statement, on the other hand, offers no detail as to how Agent Apple came to know that Mr. Rodriguez is Mr. Gonzales' supplier.

Nevertheless, *Weaver* does not ban single bare bones statements; it requires that affidavits, when viewed as a whole, state probable cause that agents will likely find the sought item in the search. *Weaver*, 99 F.3d at 1380. The 2011 affidavit does: it says the 2009 search produced 14.5 kilograms of cocaine and $19,000 in cash and that Mr. Rodriguez was observed going from 6616 U.S. Rte. 6 to a drug transaction where he delivered frozen cocaine. This is more detail than the bare bones or conclusory boilerplate proscribed in *Weaver* and is adequate to establish probable cause.

In sum, even considering the veracity of the *Franks* claim first raised in the reply brief, Mr. Rodriguez has not demonstrated that any statement was false or reckless as to the truth and has not shown the affidavits to be "bare bones" or conclusory in nature.

For these reasons, Mr. Rodriguez is not entitled to a *Franks* hearing and I deny the motion to suppress. (Doc. 361.)

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge