UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,                                    Case No.  3:12cr445

        Plaintiff

      v.                                                    MEMORANDUM OPINION
                                            AND ORDER

Francisco Rodriguez,

        Defendant


Defendant Francisco Rodriguez seeks an order from me releasing him on bond under terms
and conditions proposed in his Motion filed December 19, 2013. (Doc. 482).   For the reasons
stated below, I find the Defendant's motion not well taken and accordingly deny his motion.


I.      **Background**

The Defendant was arrested on October 4, 2012, pursuant to a multi-count indictment
charging drug conspiracy and various individual counts for drug possession and trafficking against a
total of 28 defendants.  Mr. Rodriguez has been detained continuously since his arrest, and has
previously sought release on bond with Magistrate Judge James R. Knepp II.  Judge Knepp
conducted a detention hearing at the request of the Defendant on February 11, 2013.  At the
hearing, terms of release were proposed and testimony was taken from defense witnesses, as well as
one government witness, Deputy United States Marshal Christopher Hodge.

Judge Knepp took the matter under advisement, and on February 13, 2013, issued his order
denying Mr. Rodriguez's request for release on bond.  (Doc. 212).  Citing the rebuttal presumption

in favor of detention, 18 U.S.C. § 3142(3)(3)(A), Judge Knepp expressed a number of concerns about release of Mr. Rodriguez, including the absence of knowledge of important details of his personal life by his proposed custodian, wife, and mother of his children, Cynthia Rodriguez. Additionally, Judge Knepp made reference to the testimony of Deputy Marshal Hodge describing materials found in the Defendant's jail cell, summarized by the Magistrate as "drawings or pictures with Spanish language…. and descriptions of violent acts toward an individual associated with the prosecution of the case."  Hodge also described an ongoing "investigation into possible violence towards one or more law enforcement, prosecution and judicial officers associated with this case." (Doc. 212 at 3).

Magistrate Judge Knepp also found, even had the Defendant rebutted the presumption of detention sufficiently to transfer the burden of proof to the government, clear and convincing evidence supported "a determination that no available terms and conditions, including but not limited to those proposed by the Defendant, would adequately protect the safety of other persons or the community…." (Doc. 212 at 3-4).  Judge Knepp went on in his opinion to discuss the criteria set forth in 18 U.S.C. § 3142(g).

On February 27, 2013, Mr. Rodriguez filed his Appeal of Magistrate Judge Knepp's Decision for my review, which included proposed conditions of release and some supporting documentation. (Doc. 227).  On March 11, 2013, I conducted a hearing on his appeal of the Magistrate Judge's decision.  The Defendant called Pastor Alvin Gonzales of the Templo Genesaret Church in Fremont, Ohio, as a witness in support of his release.  The government then called Ryan Emahiser, a special agent with the Gaming Unit of the Ohio Attorney General's Office, Bureau of Criminal Investigation.   After hearing the arguments of counsel, I took the matter under advisement.

While the matter was pending before me, my chambers was informed by defense counsel that additional surety for Mr. Rodriguez's bond would be offered in the future.  I did not rule upon

his pending appeal while awaiting documentation of the additional property to secure the Defendant's appearance.

During pendency of his bond appeal, the Defendant filed a motion to suppress evidence of narcotics previously seized from his home by law enforcement in 2009, three years before this indictment. (Doc. 361).  In particular, the Defendant requested a *Franks* hearing, so that he might learn the identity and challenge the reliability of a government informant who allegedly provided information allowing law enforcement to establish probable cause to obtain a search warrant for the narcotics seized in his home.  The matter was fully briefed and on September 10, 2013, I issued an opinion and order denying the Defendant's suppression motion and related request for hearing. (Doc. 392).

On September 24, 2013, the Defendant entered a conditional plea of guilty to Counts 1 and 13 of the indictment, charging drug conspiracy and possession with intent to distribute narcotics, specifically reserving his right to appeal my denial of his suppression motion to the United States Court of Appeals for the Sixth Circuit after his sentencing.  Approximately three months after his plea, he filed a Motion for Bail and Proposed Conditions of Release (Doc. 482), with supporting documentation.  On January 13, 2014, I conducted another bond hearing.  No testimony was offered by either party, although Defendant restated his arguments for release and the government those against.

## II.   **Analysis**

In deciding Mr. Rodriguez's request for bond, I have reviewed the transcripts from the three hearings, the motions filed by counsel on behalf of Mr. Rodriguez including attachments, two bond

reports from pretrial services, Magistrate Judge Knepp's opinion, and the arguments of counsel for both the Defendant and the government.

As already correctly stated by Magistrate Judge Knepp, the nature of the charges against the Defendant resulted in a rebuttable presumption for detention.  But since the Defendant's conviction due to his conditional plea, my focus is now directed to 18 U.S.C. § 3143, which states in relevant part: "the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence…be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released…."

The Defendant has offered no authority in support of his suggestion the conditional plea in some way impacts upon this burden.  In other words, I must detain Mr. Rodriguez because he has been found guilty, regardless of the nature of his plea, unless I find by clear and convincing evidence he is not likely to flee or pose a danger to the safety of any other person or the community should I release him.  Because I cannot conclude such evidence exists to carry that burden, I must deny his motion for release.

As an initial matter, a decision on his bond request is mine to make alone and anew.  Even if I chose to treat this most recent request as a continuation of the appeal of the Magistrate Judge's earlier denial, my review of the evidence and issue must be *de novo*, despite my highest personal and professional regard for Magistrate Judge Knepp.

In making my decision, I review the issue of continued detention or release under the criteria set forth in 18 U.S.C. § 3142(g):

> **(g) Factors to be considered.--**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--

4

 **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
 **(2)** the weight of the evidence against the person;
 **(3)** the history and characteristics of the person, including--
  **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
  **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
 **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release. ***

1. <u>The nature and circumstances of the offense charged.</u>

 Mr. Rodriguez has been convicted in Count 1 of the indictment of a violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), Conspiracy to Possess with Intent to Distribute Cocaine and Marijuana, a Class A felony, which carries a mandatory minimum sentence of ten years and a maximum possible sentence of life imprisonment.  His conviction in Count 13 is for Possession with Intent to Distribute Cocaine, also a Class A felony, under the same section and carrying the same penalties as Count 1.

 Mr. Rodriguez does appear to qualify for the Safety Valve provision of 18 U.S.C. § 3553(f), provided he participates in the necessary proffer before sentencing.  In that event, he has a likely advisory guideline range of 70 to 87 months, and I am not required to impose the minimum sentence of ten years on each count otherwise mandated by statute.

 His convictions do involve, however, crimes involving controlled substances, which directs me more toward his continued detention than release on bond.  In fact, the 2009 seizure of narcotics at Mr. Rodriguez's home involved around 15 kilograms of cocaine, a

significant amount of narcotics which would call for a greater sentence than lesser quantities of drugs.  His conviction is not just for possession of the narcotics but also involves participation of a serious and wide-spread drug conspiracy.  And even with avoidance of a minimum mandatory sentence, Mr. Rodriguez still faces the likelihood of a significant sentence given the nature of his convictions.

In addition, these convictions will almost certainly result in Mr. Rodriguez's detention by immigration officials after he serves any prison sentence, revocation of his lawful resident status in this country, and his deportation back to his home country of Mexico.  He would also be instructed not to return to the United States.  The absence of a holder from immigration officials at this time is apparently due only to the conditional nature of his plea.  Should the Court of Appeals affirm my decision denying him suppression of the cocaine at issue, a holder would then be lodged against him.

Mr. Rodriguez argued through counsel this likely deportation ought not to be of concern in making a decision about the Defendant's release on bond.  I cannot agree.  First, this drug conspiracy has extensive connections to the State of Texas and to Mexico.  Mr. Rodriguez was associated with persons in Texas and Mexico in the course of the conspiracy, and the conspiracy continued until arrest of these defendants in the fall of 2012.  A defendant might be far more likely to flee while on bond if he believes he will have to serve a lengthy prison sentence, only then to be held and deported by immigration officials.  Put another way, why wait to serve a significant sentence in the Federal Bureau of Prisons only to be sent to Mexico afterwards when you can flee to Mexico now and avoid that imprisonment?  Mr. Rodriguez's endangered citizenship status weighs against his release.

2.  The weight of the evidence

        This factor is likely irrelevant given my acceptance of his conditional guilty pleas, and at any rate the weight of the evidence was sufficient to sustain his convictions.  I must detain him now that he has been convicted unless I am able to make the necessary findings by clear and convincing evidence.

3.  The history and characteristics of the Defendant.

        This provision requires I consider a number of factors.  I will limit my review and discussion to subsection (A), as subsection (B) does not apply since Mr. Rodriguez, at the time of the current offense or arrest was not on probation, parole or on release "pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law…."

        Subsection (A) includes review of Mr. Rodriguez's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings…."  A key element of Mr. Rodriguez's history and characteristics that supports his release is his lack of any criminal history.  He also has family, his wife and children, in this area.  He also enjoys strong support from his parents and other family members in Texas.

        Of concern, though, is his character and mental condition.  I have serious concerns about some of Mr. Rodriguez's conduct since his arrest and detention on these charges.  First there is the matter of the "prayer cards."  While I would of course support and would defend Mr. Rodriguez's right to prayer and practice his religion, his conduct while in custody

7

crosses a line from what would ordinarily be acceptable conduct.  Deputy Marshal Hodge testified at the original detention hearing before Magistrate Judge Knepp that Mr. Rodriguez was in possession of prayer cards, the content of which was appropriately summarized by the Magistrate as "drawings and pictures with Spanish language and descriptions of violent acts towards an individual associated with the prosecution of the case."

At the March 11, 2013 detention hearing, Special Agent Ryan Emahiser testified about his translations from Spanish to English of notations made by the Defendant on three prayer cards.  Those notations including death wishes, insults and arguably threats towards one of the investigative agents.

In addition, the testimony of Pastor Gonzales at the March 11, 2013 hearing before me compounds my concerns.  The prayer cards possessed by Mr. Rodriguez were of a controversial "saint", who is apparently not a saint in the Catholic Church or other established religion, called "Santa Muerte."  After testifying about his willingness to help Mr. Rodriguez and his wife reconcile after recent marital problems, Pastor Gonzales was asked by government counsel about his knowledge of Santa Muerte.  The Pastor's response was troubling:

> A.  That's nothing good.  I believe in the bible.  I believe in God and that's something that's growing in Mexico big time.  A lot of people worship him and most of them I say it's not good.
>
> Q.  Most of them are?
>
> A.  People, criminals, people are in jails, people that – they are not good for society that's all I can tell you.

Pastor Gonzales went on to emphatically affirm that Santa Muerte is not a saint in any Christian religion.  Likewise, Special Agent Emahiser stressed that Santa Muerte was often depicted in relation to "drug smuggling, criminal activity with the cartels and anybody else that's involved in criminal activity near the border area in Mexico."

4.  <u>The nature and seriousness of the danger to any person or the community that would be posed by his release.</u>

   This factor relates to my discussion above of the prayer cards and alleged threats against a member of the law enforcement team who investigated these charges.  As I stated during the most recent hearing, I have no concerns about my safety as a result of Mr. Rodriguez's conduct, communications, and prayer cards.

   I do have serious concerns about the safety of law enforcement officers as a result of expression of threats and a wish of harm to the investigating officer.


**III.**   **Conclusion**

   Mr. Rodriguez has proposed a lengthy set of proposed conditions and surety, 18 items in all, supporting his request for release.  He has offered his wife, who resides in the area, as a custodian, as well as his mother, who has expressed a willingness to move temporarily from Texas to Northwest Ohio to be with her son and assist as a custodian.

   While these proposed conditions are impressive, a review of the circumstances surrounding these offenses, Mr. Rodriguez's troubling conduct during his incarceration by way of apparent threats against law enforcement, his connections to Texas and Mexico, the resources potentially available to him through a significant drug cartel, and his citizenship status and likely deportation, all weigh against his release.

   I cannot and do not find the evidence supports a finding by clear and convincing evidence that release is appropriate.  Accordingly, Mr. Rodriguez's request for release, whether upon new motion or appeal of the Magistrate Judge's decision, or both, is found not well taken and denied.

So ordered.

s/ Jeffrey J. Helmick
United States District Judge